IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY CORPORAL,

    Plaintiff,

    v.

LT. PENNINGTON,
OFFICER DONALDSON,
ASST. WARDEN BUTLER,
WARDEN WEBER,
SECURITY CHIEF ARNOLD,
COMMISSIONER HILL,
SECRETARY GREEN,

    Defendants.

Civil Action No.:  DKC-20-3357

## MEMORANDUM OPINION

Pending is a motion to dismiss or for summary judgment filed on behalf of Defendants Lt. Pennington, Officer Donaldson, Assistant Warden Butler, Warden Weber, and Security Chief Arnold.[1]  ECF No. 21.  The motion is opposed by Plaintiff Jeffrey Corporal.  ECF Nos. 29 and 30. No hearing is necessary for determination of the pending matter.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, Defendants' motion shall be granted.

BACKGROUND

A.  Complaint Allegations

Plaintiff Jeffrey Corporal is an inmate incarcerated at Western Correctional Institution ("WCI").  He filed this civil rights action because he was denied possession of a hard-cover book

---

[1]  Service on Defendants Commissioner Hill and Secretary Green was not accepted.  For reasons set forth below, the complaint against them shall be dismissed.

one of his relatives ordered from Amazon.  ECF No. 1 at 3.[2]  He explains that on September 18,

2020, Officers Fisher, Connelly, and Donaldson came to his cell with four books, three of which

were paperback books and one that was hard-back.  *Id*.  Officer Donaldson informed Mr. Corporal

that he is prohibited under institutional policy from possessing a hard-back book because at the

time Mr. Corporal was confined to administrative segregation pending investigation.  *Id.*

Mr. Corporal disagreed with Officer Donaldson's statement of the institutional policy and

pointed out that he had "several hard-back books" in his cell that were returned to him after he was

discharged from disciplinary segregation.  ECF No. 1 at 4.  Officer Connelly then showed Mr.

Corporal "a document" given to him by Lt. Pennington stating that inmates who are assigned to

administrative or disciplinary segregation are prohibited from having hard-back books.  *Id*.  Mr.

Corporal recalls that Officer Connelly told him that the document was "Lt. Pennington's

interpretation of the book rule" and meant that Mr. Corporal could not have the hard-back book

ordered for him by his family.  *Id*.  Mr. Corporal was then given the choice either to authorize

destruction of the hard-back book or its return to Amazon, or he would also be denied possession

of the paperback books.  *Id*. at 4-5.  Officer Donaldson denied Mr. Corporal's request to store the

hard-back book in the property room and denied Mr. Corporal's request that Officer Donaldson

fill out a confiscation of property form explaining why the book was not given to Mr. Corporal.

*Id*. at 5.  Following the exchange between the officers and Mr. Corporal, the officers left without

delivering any of the books to Mr. Corporal.  ECF No. 1 at 5.  According to Mr. Corporal there is

no institutional policy that allows Officer Donaldson to withhold allowable property based on the

refusal of an inmate to authorize the destruction or return of property that is not permitted.  *Id*.

---

[2]   Mr. Corporal filed an "Amended and Supplemental Complaint" (ECF No. 16) that incorporates the allegations raised in his original complaint but changes the amount of monetary damages he seeks.  As such, the factual allegations in the original complaint make up his claims.

Mr. Corporal contacted all of the named Defendants by letter stating that inmates who are assigned to administrative segregation pending investigation are permitted to have hard-back books and warning that he would file a federal lawsuit for the illegal censorship of his hard-back books.  ECF No. 1 at 5-6.  After he did not receive a response, Mr. Corporal filed the instant lawsuit.  He alleges that a policy that entitles "prisoners to a hearing for their books censored by prison staff" was not enforced, or alternatively, because a policy providing for such a hearing was not promulgated, he was denied due process.  *Id*. at 6.  He also maintains that the book vendor, in this case Amazon, is entitled to notice that the book sent to a Maryland prisoner was censored.  *Id*.

On October 1, 2020, Officer Donaldson again delivered books to Mr. Corporal which Mr. Corporal had ordered for himself.  ECF No. 1 at 7.  The books were all paperbacks but did not include the three paperbacks Officer Donaldson had brought to Mr. Corporal's cell on September 18, 2020.  *Id*.  When Mr. Corporal asked why those books were not delivered, Officer Donaldson said that it was due to the fact that Mr. Corporal filed "a prison grievance assigned case no. WCI-1809-20 about [Officer Donaldson] illegally censoring [Mr. Corporal's] four books on September 18, 2020."  *Id*.

Mr. Corporal explains that his administrative remedy procedure complaint ("ARP") was denied by the Warden on October 9, 2020.  ECF No. 1 at 7.  He states that he mailed an appeal to the Commissioner of Correction on October 11, 2020[3] but did not hear back from the Commissioner within 30 days of the date he mailed the appeal, so he filed a complaint with the Inmate Grievance Office ("IGO").  *Id*. at 7-8.  He states that he has not received anything from the Commissioner or the IGO acknowledging receipt of his appeal and surmises that the failure to acknowledge his appeals is retaliation for prior lawsuits he has filed in this court.  *Id*. at 7.

---

[3]    Mr. Corporal's complaint is dated November 9, 2020.  ECF No. 1 at 8.

3

In his amended and supplemental complaint, Mr. Corporal asserts that after he filed his complaint in this court, "property officers at WCI have failed to uncensor [sic] and deliver to [him] the books" that are the subject of this litigation but have delivered other books he has ordered. ECF No. 16 at 2.  He believes that the "illegally censored books" have been returned to the sender without his consent.  *Id*. at 2-3.

Mr. Corporal alleges that Officer Donaldson violated his First Amendment "right to read" by illegally censoring his books; denying Mr. Corporal access to paperback books because Mr. Corporal would not consent to having the hard-back book returned or destroyed; and refusing to follow prison policy that allows books to inmates on administrative segregation.  ECF No. 1 at 9. He adds that Officer Donaldson violated his First Amendment right to free speech when he continued to censor the books in retaliation for Mr. Corporal filing an ARP.  *Id.*  He also alleges that Officer Donaldson denied him federal due process rights when he refused to fill out a property confiscation form or to explain the reason for denying Mr. Corporal his books.  *Id.*

With respect to Defendants Arnold, Weber, Butler and Pennington, Mr. Corporal alleges that they violated his First Amendment right to read by failing to enforce the prison policy allowing him to have paperback and hard-back books while assigned to administrative segregation.  ECF No. 1 at 10.  He asserts that Defendants Green, Hill, Butler, Weber, and Arnold violated the due process rights of Amazon when they did not provide notice to the company concerning the refusal to provide the books to Mr. Corporal and violated his right to due process by failing to provide procedural safeguards against the censorship of his books.  *Id*.  Mr. Corporal also raises pendent State claims against all Defendants that mirror his federal claims and invoke Maryland's constitution.  ECF No. 1 at 11.

As relief, Mr. Corporal seeks monetary damages[4] and an injunction requiring Defendants to dispense books to prisoners in compliance with federal law.  ECF No. 1 at 13; ECF No. 16 at 2. Specifically, Mr. Corporal seeks a "permanent injunction compelling Defendants to provide due process under *Hopkins v. Collins*, 548 F.2d 503 (4th Cir. 1977)" and to provide "due process under *Montcalm Publishing Co. v. Beck*, 80 F.3d 105 (4th Cir. 1996) to publishers for when their publications . . . are censored by prison staff."  ECF No. 16 at 2.  He further seeks an injunction requiring hard-back books to be permitted to all Maryland State inmates.  *Id*.

B.    Defendants' Response

Defendants assert that Mr. Corporal was on administrative segregation from June 25, 2020 until March 17, 2021.  ECF No. 21-1 at 2; ECF No. 21-3.  The relevant institutional directive, WCI Institutional Directive 220.0007.1, states that "[h]ardbound books may be allowed, except for inmates in Administrative or Disciplinary segregation."  ECF No. 21-4 at 5.  An additional institutional directive regarding incoming and outgoing mail also states that inmates on administrative and/or disciplinary segregation are not allowed to have hardbound books.  ECF No. 21-5 at 4.  In light of the objective evidence, Defendants assert that they are entitled to judgment in their favor because the policies were not violated as asserted by Mr. Corporal.

C.    Response in opposition

Mr. Corporal argues that Defendants have only responded to a part of his claim and have not addressed his constitutional claims.  Specifically, Defendants have not cited a legitimate security interest for denying Mr. Corporal his books, nor do they deny that he received no due process in relation to the deprivation of his property.  ECF No. 30 at 2-4.

---

[4]    Mr. Corporal seeks $20 per day from September 18, 2020 until the date this case closes, ten-thousand dollars in punitive damages against each Defendant; return of the $350 filing fee; and one-million dollars in compensatory damages.  ECF No. 16 at 2.

STANDARD OF REVIEW

A.      Motion to Dismiss

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).   Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."   *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).   Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss.   *Id.* at 555.   Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."   *Id.* at 563.   To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S.

at 678.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

B.     Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002).  Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

ANALYSIS

Defendants assert that there was no violation of prison policy when Mr. Corporal was not permitted to have a hardbound book; there is no basis for liability stated with regard to the supervisory defendants; and they are entitled to qualified immunity.  ECF No. 21-1.

A.     Personal Participation and Supervisory Liability

Mr. Corporal's complaint describes actions taken by Officer Donaldson but does not specifically describe how Defendants Pennington, Butler, Weber, Arnold, Commissioner Hill, and Secretary Green have participated in the alleged deprivation of his constitutionally protected rights. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.  It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit)  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link

between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Because Mr. Corporal's claims against Pennington, Butler, Weber, Arnold, Commissioner Hill and Secretary Green appear to be based solely on their positions as supervisory personnel and because he does not allege their personal participation in denying him access to the hardbound book at issue, the claims against these Defendants are dismissed.  With regard to Officer Donaldson, he is entitled to qualified immunity.

B.    Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "In particular, . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).  The defense provides protection for public officials for mistakes of law, mistakes of fact, or a combination of the two.  *See Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting).  Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this court.  Although the Supreme Court's decision

in *Saucier v. Katz*, 533 U.S. 194 (2001) directed a rigid approach to the inquiries involved, the requirement that the two-prong analysis must be "considered in proper sequence" has since been revised. *Katz*, 533 U.S. at 200. Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 818.

The first prong is whether ""[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue. *Id.* If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability. The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful. *Dist. of Columbia v. Wesby*, _ U.S. _, 138 S. Ct. 577, 589 (2018) citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The law with regard to First Amendment challenges against prison officials does not include any precedent condemning the practice in place at WCI. While prisoners retain First Amendment rights, those rights are not unlimited and may be curtailed by prison officials under appropriate circumstances. *See Jones v. N.C. Prisoner's Labor Union, Inc.*, 433 U.S. 119, 125 (1977) (upholding prison regulations limiting prisoner's speech regarding the operation of a prisoner union). In the context of such claims, the Court has also noted that where there is no

evidence of an "exaggerated response" by prison officials in promulgating and enforcing rules that impact on First Amendment rights of prisoners, the rules are constitutionally sound so long as they are enforced in a neutral manner.  *Bell v. Wolfish*, 441 U.S. 520, 551 (1979).  Mr. Corporal has a limited First Amendment right to send and receive mail.  *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Johnson v. Goord,* 445 F.3d 532, 534 (2d Cir. 2006).  The Supreme Court in *Beard v. Banks*, 548 U.S. 521 (2006), upheld a Pennsylvania prison policy denying newspapers, magazines and photographs to inmates confined to long term segregation and administrative or disciplinary segregation.  The Pennsylvania prisoners subject to the policy were, however, permitted to send and receive legal and personal correspondence, religious and legal materials, library books and writing paper.  *Id*. at 526.  In reaching its conclusion, the Court applied the four-factor test announced in *Turner v. Safely*, 482 U.S. 78 (1987), to determine the reasonableness of the regulation at issue:

> First, is there a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"?  Second, are there "alternative means of exercising the right that remain open to prison inmates".  Third, what "impact" will "accommodation of the asserted constitutional right ... have on guards and other inmates, and on the allocation of prison resources generally"?    And, fourth, are "ready alternatives" for furthering the governmental interest available?

*Banks*, 548 U.S. at 529, quoting *Turner*, 482 U.S. at 89-90.

The Court upheld the restrictions at issue in *Banks* based on the prison officials' explanation that the restrictions were meant to act as an incentive for better behavior by inmates in long term segregation.  Here, Mr. Corporal has not alleged an outright ban on books, nor do the facts before this court resemble claims requiring a First Amendment analysis.

There is also no precedent condemning the lack of procedural due process following the denial of access to a hardbound book.  There must first be a protected liberty or property interest

at stake before due process protections are required.  In the prison context there are two different types of constitutionally protected liberty interests which may be created by government action. The first is created when there is a state created entitlement to an early release from incarceration. *Bd. of Pardons v. Allen*, 482 U.S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (state created liberty interest in good conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  As noted, no court has held that denial of access to a hardbound book triggers due process protections.

Officer Donaldson denied Mr. Corporal his hardbound books in compliance with a prison policy which he had no authority to ignore.  Mr. Corporal was mistaken in his belief that the policy was violated.  There has been no Supreme Court or Fourth Circuit Court of Appeals decision condemning such a policy as unconstitutional either because it violates the First or Fourteenth Amendment.  As such, the law was not sufficiently clear so that Officer Donaldson would have understood that denying Mr. Corporal a hardbound book pursuant to established policy was in any way unlawful.  Donaldson is therefore immune from Mr. Corporal's damages claim.

C.    Injunctive Relief

Mr. Corporal also seeks injunctive relief when he asks this court to issue an order requiring prison officials to permit all inmates on administrative or disciplinary segregation to have hardbound books.  Mr. Corporal's attempt to assert a claim on behalf of other inmates must fail for two reasons.  First, he has no standing to assert such a claim.  "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the

defendant and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (citations and internal quotation marks omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Mr. Corporal may not represent a putative class of individuals as a self-represented litigant. The Fourth Circuit has consistently held that a class action may not be certified in instances where a self-represented litigant acts as a representative of the class. *Myers v. Loudon County Public Schools*, 418 F.3d 395, 400 (4th Cir. 2005) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)). Additionally, the prerequisites for certification of a class, as set forth in Fed. R. Civ. P. 23, have not been established.

Secondly, according to the record before this court, Mr. Corporal is no longer confined to administrative or disciplinary segregation making his claim for injunctive relief moot. *See* ECF No. 21-3 at 1 (as of April 9, 2021, disciplinary segregation time was completed and Mr. Corporal was assigned to protective custody). Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted). For a declaratory judgment to issue, there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 242, 242 (1937); *see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible

for events occurring subsequent to the filing of the complaint to render the matter moot.  *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Rd's Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief).  Accordingly, Mr. Corporal's request for injunctive relief must also be denied.

CONCLUSION

Defendants' motion to dismiss or for summary judgment (ECF No. 21) is granted by separate Order which follows.


July 30, 2021                                              /s/

                                        DEBORAH K. CHASANOW
                                        United States District Judge